# Summers' Appeal.

1. By the 4th section of the act of 16th April 1849, judgments confessed to evade the act of 17th April 1843, concerning preferences in assignments, followed by an assignment of real estate, are void as against other creditors, and are not entitled to preference out of the proceeds of sale of such real estate, but are entitled only to a *pro rata* payment with the other debts of the debtor.

[Summers' Appeal.]

2. A debtor, after suit against him, voluntarily executed five judgment bonds in favor of other creditors, intending at the time to make an assignment of his *real estate*, and about the same time selling portions of his personal property; after the entry of judgments on the bonds he executed an assignment of his *real estate* only, in trust for creditors. On the day it was recorded, an award, in favor of the plaintiff in the suit, was filed. The remaining *personal estate* of the debtor was sold on a fi. fa. on a judgment on a bond executed subsequent to the recording of the assignment. The real estate was sold by the trustee, for a sum not sufficient to pay the five judgments: *Held*, that the five judgments were not alone entitled to the proceeds of sale of the real estate, but that the same were to be distributed *pro rata*, amongst all the creditors.

3. If the debtor at the time of confessing the judgments knew that he was insolvent, his subsequent execution of the assignment is conclusive evidence that the judgments were given in fraud of the act of 1843.

THIS was an appeal by Samuel Summers, a creditor, from the decree of the Court of Common Pleas of *Lancaster county*, confirming the report of the auditor appointed to distribute the balance on the account of John Strohm, Esq., assignee of the real estate of Christian Shultz, Sr., and wife.

Christian Shultz, Sr., was the owner of sixty-two acres of land in the county of Lancaster, and of personal property, when, on the 22d of May 1849, Samuel Summers brought an action of debt in the Common Pleas of Lancaster county, to August term 1849, No. 58, against him, to recover the amount due upon a single bill for $2800, with interest, from October 14, 1843. On the same day a narr. was filed, and a rule entered by plaintiff's attorney, to choose arbitrators on the 7th day of June 1849, on which day the parties, by their attorneys, chose arbitrators, to meet on the 25th day of June 1849.

In the mean time, to wit, on the 18th day of June 1849, seven days before the time fixed for the meeting of the arbitrators, Christian Shultz, Sr., executed five several judgment bonds—one to Benjamin Barr, for $267.75; one to Jacob F. Herr, for $700; one to Benjamin Shultz for $500; one to Magdalena Eckman for $2200.02; and one to John Groff for $183; at the same time selling portions of his personal property to divers persons; which said five judgment bonds were, on the 19th day of June 1849, entered in the prothonotary's office. Three days after the entry of these judgment bonds, to wit, on the 22d day of June 1849, Christian Shultz, Sr., and wife, executed a deed of assignment of his *real estate only*, to John Strohm, Esq., in trust for the benefit of the creditors, which, on the 25th day of June 1849, was entered in the recorder's office of the county of Lancaster, *and on the same day* the award of arbitrators in the suit of Samuel Summers (the appellant) *v.* Christian Shultz, Sr., was filed in the prothonotary's office for $3097.83. On the 27th day of June 1849, Christian Shultz, Sr., executed a judgment bond to Joseph Armstrong for $545, which on the same day was entered in the prothonotary's office, and a fi. fa. immediately issued thereon; upon which the remaining portion of his personal property was sold by the sheriff.

The assignee of the real estate, John Strohm, Esq., sold the

same, and on the 11th day of May 1850 filed his account in the prothonotary's office of the Court of Common Pleas, which on the 17th day of June 1850, was confirmed *nisi*, there being a balance in his hands for distribution, being the proceeds of the real estate, deducting the expenses of the trust, of $3424.54¼. This account showed that Christian Shultz, Sr., was insolvent at the time he executed the five judgment bonds, to wit, on the 18th day of June 1849, and the proceeds of the real estate were not sufficient to pay the five judgments in full.

On the 17th day of June 1850, an auditor was appointed to distribute the balance in the hands of the assignee among the persons entitled to receive the same. On the hearing before the auditor, John Strohm, Esq., the assignee, was examined as a witness, who testified as follows :—

To the best of my recollection, I drew the five judgment bonds given by Shultz to Barr, Herr, Groff, Shultz, and Eckman. I also drew the deed of assignment. I conversed with Christian Shultz about the deed of assignment before those judgments were given. I don't recollect of any terms being arranged, except that the real estate only was to be assigned to me; and this conversation was on the Saturday previous to the giving of the judgments. The deed of assignment was made (I suppose) because he was unable to meet his obligations. He told me that he had got into difficulties, and wanted to make an assignment to me for the benefit of his creditors. This was before the judgments were given. I do not think that he alluded to the claim of Summers, except that he said at the outset, that "Sam" had pushed him. By "Sam" I understood him to mean, at the time, Summers; although I did not ask him who he meant by "Sam," I so understood him. I can't tell why the personal property was not included in the assignment, except what I might infer from the subsequent proceedings. I do not think that any thing was stated to me why these judgments were given. I was not consulted as to the propriety of giving those judgments before he came to me about the assignment, nor even then. He had spoken, I presume, to other persons : he said he had informed himself that he could make an assignment of real estate alone : he did not consult me about the form of assignment—I did not act in the drawing of these instruments of writing as his counsel, only as scrivener. At the time the deed of assignment was written and executed, nothing was said about these judgments. He did not state to me his reasons for assigning the real estate alone. A portion of the personal property was levied on by the sheriff on the judgment of Armstrong. Shultz sold a portion of it about the time the judgments were given to Jacob Diffenbaugh and others. Mr. Shultz was engaged in distilling.

The attorneys for Samuel Summers claimed a *pro rata* dividend of the fund for distribution on his judgment against Shultz: the

attorney for the five judgment creditors claimed the whole of the fund in satisfaction of the five judgments. On the 21st day of December 1850, the auditor reported that the five judgments entered on the 19th day of June 1849 were entitled to the balance remaining in the hands of the assignee, and therefore distributed it among those judgments *pro. rata.*

This report was filed in the Court of Common Pleas, and was afterwards excepted to by the counsel of Samuel Summers, upon the ground that the auditor erred in not distributing the fund *pro rata* to all the debts of Christian Shultz, Sr., and not in awarding a *pro rata* dividend to Samuel Summers. These exceptions were argued in the Court of Common Pleas, and on the 18th day of March 1851, the court confirmed the report of the auditor. From this decree of the Court of Common Pleas this appeal was taken.

The act of 17th April 1843, to prevent preferences in assignments, provides that all assignments of property in trust, which shall hereafter be made by debtors to trustees, on account of inability at the time of the assignments to pay their debts, to prefer one or more creditors, (except for the payment of wages of labor,) shall be held and construed to inure to the benefit of all the creditors in proportion to their respective demands; and all such assignments shall be subject in all respects to the laws now in force relative to voluntary assignments : *Provided,* that the claims of laborers thus preferred shall not severally exceed the sum of fifty dollars.

The 4th section of the act of 16th April 1849 (*Acts* 664) enacts, that any condition in assignments of property made by debtors to trustees on account of inability at the time of the assignment to pay their debts, within the meaning of the act entitled "An act to prevent preferences in assignments," approved April seventeenth, one thousand eight hundred and forty-three, for the payment of the creditors only who shall execute a release, shall be taken as a preference in favor of such creditors and be void, and the assignment be held and construed to inure to the benefit of all the creditors in proportion to their respective demands : *Provided,* that no *bona fide* judgment or lien acquired against the property of any debtor, or any sale or transfer of the property of such debtor, unless the same shall have been obtained, acquired, or made with intent to evade the provisions *of the said act,* shall be avoided or defeated by the subsequent discovery that such debtor was insolvent at the time such judgment was obtained, lien acquired, or transfer made.

*Thompson* and *Stevens* were for Summers, the appellant.—By the 4th section of the act of April 16, 1849, the legislature intended to prevent and avoid all preferences by a man in failing circumstances, who, at the time of granting such preference by

judgment or other lien, knew that he was insolvent, and contemplated making an assignment for the benefit of his creditors, and gave such lien for the purpose of preferring such of his creditors to others.

· The evidence in the case proves that at the time of giving the judgments in question, Christian Shultz knew that he was insolvent—had determined to make an assignment—had spoken to a scrivener for that purpose,·and gave the judgments in order to prefer the plaintiffs therein to his other creditors, and especially to Samuel Summers. *A deed of assignment* with a preference was void, though the *creditor* did not know of the intent to defraud; and the proviso in question contains general language. The proceeds of sale of the land will not pay the five judgments. Shultz was thus insolvent.

*Frazer*, contra.—The first five judgment creditors of Christian Shultz knew nothing of the situation of his estate when the judgment bonds were executed; nor is there any testimony to show any other intention on their part than to obtain judgments for *bona fide* debts. The proviso to the act of 1849, however, is, to a great extent, without meaning, or merely declaratory of the law as it stood before.

There is no proof that Christian Shultz *knew* he was insolvent when he gave the judgments—and his land afterwards selling at a certain price does not prove such knowledge, nor that he had given these judgments in order to prefer the appellees.

The act of 1849 merely prohibits preferences *to releasing creditors*, and does not prohibit confession of judgments to honest creditors. No time is fixed within which a judgment is to be void. It might run back for years. The proviso did not mean this, but was intended only to meet the decision in Lea's Appeal, 9 *Barr* 504. The judgments and assignment are different and distinct acts: Blakey's Appeal, 7 *Barr* 449. Does the proviso go farther than the act; is it not a mere check to the act itself. If no assignment had been made, the judgments would have been valid. Can the judgments be defeated by the mere act of Shultz alone? The act of 1843 does not prohibit the confession of judgments.

· The opinion of the court was delivered May 26, by

COULTER, J.—The hardship of withholding from a debtor the right of securing an honest and *bona fide* creditor, by confessing a judgment to him, although such debtor might afterwards execute an assignment for the benefit of his creditors, and the anomalous character of an interdict upon doing that voluntarily which the creditor could compel him to do by suit, as well as the apparent invasion of private right, by taking from a man dominion over his affairs, exercised for an honest and fair purpose, while he continued

*sui juris*, were fully pointed out in the case of Blakey's Appeal, 7 *Barr* 449. In that case, it was ruled that a judgment confessed by a man in embarrassed circumstances was neither fraudulent nor void, but good in favor of the judgment creditor, although the debtor ten days afterwards executed an assignment. We held that the act of 17th April 1843, entitled "An act to prevent preferences in assignments," did not avoid such *bona fide* judgments, and was confined to preferences contained in the assignment itself, according to the plain meaning of the act. But in the opinion delivered in that case, it was stated, that if the legislature extended the interdict to confession of judgment by a man in embarrassed circumstances, who afterwards executed an assignment, this court would cheerfully carry out such enactments. The statute of 16th April 1849, entitled "An act supplementary to the act about lunatics and habitual drunkards," 4th section, seems to have been an acceptance of the overture, and was no doubt enacted in consequence of that decision. The act is exceedingly obscure—counsel pronounced it insensible—but there is a glimmering of intent in it. The clause is as follows : " Provided, that no *bona fide* judgment, or lien acquired against the property of any debtor, or any sale or transfer of the property of any debtor, unless the same shall have been acquired or made with intent to evade the provisions of the said act, shall be avoided or defeated by the subsequent discovery that such debtor was insolvent at the time such judgment was obtained, lien acquired, or transfer made."

At first blush, the section would seem intended to save, not destroy; but there is nothing going before to which the section can apply. It must be considered, and is, an independent and positive enactment. There are three affirmations to be extracted from it. 1st, That judgments, &c., made to evade the act of 1843, are void. 2d, That knowledge of insolvency at the time the judgment, &c. were made, shall in itself be evidence that they were made with intent to evade the act. 3d, That if the debtor was actually insolvent at the time, but did not know it until afterwards, that the judgment shall remain good. The whole thing, then, hinges upon the *scienter* of the debtor as to his solvency or insolvency at the time he gave the judgment or made the transfer. The knowledge of the creditor or the alienee seems not to enter into the account any more than it did in judgments or transfers before bankruptcy. The objects of the acts of 1843 and 1849 seem to be to force a debtor who makes an assignment *in invitum* into a sort of bankruptcy, so far as the creditors are concerned, without equivalents of bankruptcy to himself.

Did, then, Shultz know, at the time of giving or making the judgments to the several judgment creditors, that he was insolvent at that time ? If he did, as he executed an assignment a few days afterwards, these judgments are void, because, by the act of 1849,

that is made conclusive, that they were given in fraud of the act of 1843, and therefore void. It seems clear enough that he did know that he could not pay his debts, and that his property would not do it. Mr. Strohm testifies that he drew the five judgment bonds, and also the deed of assignment; that the bonds were given a few days before the assignment, but that he talked to him about drawing the assignment before he wrote the bonds. Strohm was the assignee, and he says that Shultz told him he could not pay his debts. But there is pregnant evidence in the deed itself, which recites his inability to pay his debts, and directs his trustee to pay his just debts equally and ratably. It appears that the money produced by the sale of the assigned property will not pay the five judgments, and is applied to them by the auditor *pro rata*, leaving the judgment of Summers, the appellant, for $3009, and the judgment of Armstrong for $545, untouched, and, perhaps, other debts which don't appear on the record. We are of, opinion that by the 4th section of the act of 16th April 1849, the five judgments confessed to B. Barr, J. F. Herr, B. Shultz, M. Eckman, and John Groff, are void, as against the other creditors, and have no preference. The decree of the court below is reversed, and this court decrees the fund to all the creditors of Christian Shultz *pro rata;* and the record is remitted to the court below to carry this decree into effect.